IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PIASA COMMERCIAL INTERIORS, INC.,**

**Plaintiff,**

**v.**

**J.P. MURRAY COMPANY, INC.,**
**d/b/a MURRAY COMPANY, et al.,**

**Defendant.**                                             No. 07-617-DRH

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is a Motion for Partial Summary Judgment Against Defendants J.P. Murray Company, Inc. and Fidelity and Deposit Company of Maryland, on Counts I and II of the First Amended Complaint (Doc. 73). Defendant J.P. Murray filed an opposing Response (Doc. 90). Plaintiff has filed a Reply (Doc. 95). For the following reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. 73).

### II. Factual Background

The undisputed facts presented state that Plaintiff entered into a contract to perform frame and board, spray-on fireproofing, acoustical and E.I.F.S. work which Defendant Murray (hereinafter "Defendant") was obligated to perform as a general contractor for Richmond Memorial Hospital. On June 21, 2007, Defendant issued a notice of termination, terminating Plaintiff's subcontract with Defendant.

From the period between the date Plaintiff entered into the contract and when Defendant terminated the contract on June 21, 2007, the parties present two different version of events.[1]

Plaintiff contends that it performed the subcontract with Defendant to the extent that performance of the overall project by Defendant permitted Plaintiff to perform its subcontract. (Doc. 2 ¶ 10). The subcontract work involved work to both the existing hospital building and a new section of the hospital added as part of the hospital project. (Doc. 69, Ex. 1 ¶35). The vast majority of Plaintiff's subcontract work involved work on the new building, while a small part involved work on the existing building. (*Id.*).

Part of Plaintiff's job was to install spray-on fireproofing material on the roof deck. Prior to applying the material, Plaintiff warned Defendant that the material shouldn't be applied on the underside of the roof deck until all work on the roof was completed because substantial roof traffic could affect the finished product as specifically warned in the installation specifications. (Doc 73 ¶14; Doc. 69, Ex. 1 ¶¶29-31). Roof traffic could cause the fireproofing to delaminate and fall from the underside of the roof deck. (*Id.*). After Plaintiff added the spray-on material, Plaintiff contends that Defendant's roofing subcontractor worked extensively on the roof leading to extensive roof traffic. (Doc. 73 ¶15; Doc. 69, Ex. ¶¶30-35, 38-44).

On May 2, 2007, Defendant suspended work on the new building part

---

[1] The Court notes that both Plaintiff and Defendant Murray incorporate, by reference, their briefs regarding Defendant Murray's motion for partial summary judgment (See docs. 39, 70, & 77).

of the project while it investigated the cause of spray-on fireproofing that had fallen from the roof deck. (Doc. 73 ¶6; Doc. 69, Ex. 1 ¶ 35). Defendant did not inform Plaintiff either in writing or orally that Defendant believed that Plaintiff had improperly installed the spray-on fireproofing and Defendant further refused to give Plaintiff copies of two reports of Thermal Consulting, the company retained by Defendant to examine the spray-on fireproofing on the roof deck, issued on May 19, 2007 and July 27, 2007. (Doc. 73 ¶7; Doc. 69, Ex. 1 ¶¶33-34, 38-44, 46-50). Neither was Plaintiff told of the alleged defects or given an opportunity to inspect the fireproofing after the June 21, 2007 termination date. (Doc. 73 ¶9; Doc. 69, Ex. 1 ¶51). Prior to the June 21, 2007 termination notice, Plaintiff repeatedly offered to perform the small amount of remaining work in a piece meal fashion but required additional compensation for working in that fashion. (Doc. 95 p. 9: Doc. 69, Ex. 1 ¶62).

Plaintiff last performed work on May 18, 2008. (Doc. 2 ¶18). At that time, Plaintiff had performed 97.95 percent of its subcontract work on the project. (Doc. 73 ¶5; Doc. 69, Ex. 1 ¶¶ 28 & 36). On June 21, 2007, Defendant issued a notice of termination, terminating Plaintiff's subcontract with Defendant. (Doc. 2 ¶19). The letter, as well as a facsimile memorandum of June 6, 2007 contended that Piasa was being terminated because it had failed to timely perform work on the 3-week schedules. (Doc. 73 ¶12). Piasa contends that the majority of the 3-week schedule could not be performed between May 2, 2007 and June 21, 2007 because of the suspension on the new building part of the project and because hospital

personnel still occupied substantial parts of the existing building which was to be rehabilitated. (Doc. 73 ¶12; Doc. 69, Ex. 1 ¶¶ 61-75, 77-79).

Plaintiff contends that the subcontract between Plaintiff and Defendant required Defendant to provide Plaintiff with seven (7) days written notice and that Defendant terminated without certification by the architect that sufficient cause existed for such an action. (Doc. 73 ¶10-11; Doc. 69, Ex. 1 ¶¶ 10-14, 61-75, 77-79). Specifically, Plaintiff alleges that the subcontract required Defendant to file written notices of any complaints to both Plaintiff and the architect, as well as submit all disputes to the architect for resolution. (Doc. 73 ¶10; Doc. 69, Ex. 1 ¶¶10-14). Plaintiff also alleges that the subcontract incorporates the project manual as part of the subcontract and the project manual adopts A.I.A. 201 (1997 edition). (Doc. 73 ¶ 2; Doc. 69, Ex. 1 ¶¶ 4-5, 9-10). Plaintiff also contends that Defendant had failed to pay Plaintiff amounts due under payment applications No. 8 and 9 in breach of the subcontract prior to the June 21, 2007 notice of termination. (Doc. 73 ¶3,10-14, 17-27).

Defendant, however, presents a different version of the events. Defendant argues that it terminated Plaintiff's subcontract because Plaintiff failed to perform work for over a month and a half and because Defendant learned that the fireproofing work performed by Plaintiff had substantial defects. (Doc. 90 p.1).

Defendant contends that Plaintiff was terminated because it had failed to perform its work. Specifically, Defendant states that on April 13, 2007, Plaintiff sent Defendant a fax stating that it wasn't going to finish the portion of its

subcontract related to the remodeling work in the original hospital building. (Doc. 90, Ex. 1 ¶6 & Ex. 1-A). Plaintiff continued to do work in the new addition, but never performed any remodeling work in the original hospital building. (*Id*. at Ex. 2 ¶5). Plaintiff completely stopped work on the project on May 2, 2007. Defendant contends that it gave Plaintiff opportunities to continue work, but that Plaintiff insisted it would not perform the remodel work unless it could due all of the work at one time. (*Id*. at Ex. 1-E, F, & G). However, this suggested work schedule was contrary to Defendant's schedule. (*Id*. at Ex. 1 ¶¶ 9 & 11, Ex. 1-F).

As to the terms of the subcontract agreement, Defendant disputes that A.I.A. A201 applies to the subcontract agreement with Plaintiff. (Doc. 39 n.2). Defendant contends that the plain language of the Subcontract Agreement makes clear at A.I.A. A201 does not apply.

August 29, 2007, Plaintiff filed its three count complaint seeking monetary damages against Defendant Murray Company and Fidelity and Deposit Company of Maryland for breach of contract, breach of payment bond, and vexatious refusal to pay. (Doc. 2). On September 25, 2007, Defendant Murray Company filed a counter-claim alleging breach of contract. (Doc. 8). In response to Defendant's counterclaim, Plaintiff filed an answer arguing that Defendant had breached the subcontract in various ways. (Doc. 19).

Plaintiff has moved for partial summary judgment on Counts I and II of the First Amended Complaint. Plaintiff argues that Defendant Murray Company breached the subcontract by failing to pay Plaintiff pay applications No. 8 and 9.

Plaintiff further argues that it is entitled to summary judgment because Defendant breached the subcontract by failing to request or obtain certification from the architect that good cause for termination existed and by failing to submit either written or oral notice to Plaintiff that Defendant contended that the fireproofing installation was defective.

### III.  Discussion

**A.    Summary Judgment**

Summary judgment is appropriate under the **FEDERAL RULES OF CIVIL PROCEDURE when** "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Inc. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999).** In response to a motion for summary judgment, the non-movant may not simply rest on the allegations as stated in the pleadings. Rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant

bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324).**

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted);** *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996);** ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).** However, when all the Court has before it are the diametrically opposed statements of the parties on the critical and ultimate issues of fact, the Court, not in a position to make credibility findings, must pass the case to the next phase of litigation.

**B.    Analysis**

Plaintiff argues that it is entitled to summary judgment on Counts I and II of its First Amended Complaint because Defendant breached its subcontract agreement. Plaintiff argues that Defendant breached the subcontract agreement by failing to pay Plaintiff pay applications No. 8 and 9; by failing to obtain an architect's certification that good cause existed for Defendant's termination of Plaintiff, and because Defendant failed to provide written notice of the fireproofing claim.

However, having reviewed the parties' memorandum and facts, the Court finds that there are numerous genuine disputes of material fact which prevent this Court from entering summary judgment. Plaintiff and Defendant present two

entirely different version of events and there are genuine disputes regarding the alleged material breaches of the subcontract.

With regards to whether Defendant breached the subcontract by failing to pay application No. 8 and 9, there is a genuine dispute of material facts. Plaintiff maintains that Defendant breached the subcontract by withholding payments on Pay Applications No. 8 & 9. Plaintiff also states that while Defendants were withholding payments due to the alleged fireproof bond failure, that reasoning was not legitimate as Defendant was required to first submit a written claim to Plaintiff and notify the architect under the terms of the subcontract and A.I.A. 201. Defendant, Plaintiff alleges, was still required to make progress payments until resolution of its claims. Defendant, on the other hand, argues that it had the right to withhold payments due to Plaintiff's repudiation of the contract. Defendant contends that Plaintiff expressly stated in April that it was not going to perform remodeling work on the existing hospital and stopped work on the project on May 2. (Doc. 90, Ex. 1 ¶6).

Clearly there are genuine disputes of material facts. Defendant contends that Plaintiff expressly stated it wasn't going to work on the project and refused to return to work even after Defendant offered Plaintiff numerous opportunities to work on the project. Plaintiff contends that it offered to work on the project piecemeal and that very little work could be completed on the project. Plaintiff and Defendant dispute whether work could have been completed during the period when Plaintiff stopped work on May 2, 2007 and the termination notice of June 21, 2007. Plaintiff argues that work on the 3-week schedule could not be performed because Defendant

had suspended work on the new building and because hospital personnel still occupied those parts of the existing building that were to be remodeled. (Doc. 73 ¶ 12, Doc. 69 Ex. 1 ¶¶ 61-75, 77-79). However, Defendant contends that work could have been completed as the suspension was only a partial suspension and did not apply to "non-finishing" work like drywall work. (Doc. 90, Ex. 2 ¶¶7-12). Also the majority of work was in the existing hospital building which was not affected by the suspension (*Id*. at Ex. 2-A pp. 35-39, 48, & 52-64). As to the hospital personnel in the original hospital building, Defendant argues that many of the rooms that Defendant wanted Plaintiff to perform work in were vacated, but that it was understood that in those rooms that were occupied, work would still be performed as partitions were used to seal off certain section. (*Id*. at pp. 31-33, 64). Three of the rooms were vacated and were ready for Plaintiff to work on. (*Id*.).

   The parties also dispute the terms of the subcontract agreement and whether A.I.A. 201 applied to the subcontract. Both parties claim that the terms of the subcontract clearly supports their interpretation. Plaintiff maintains that the subcontract included the project manual and that the project manual incorporated A.I.A. 201. As Defendant argued in its partial motion for summary judgment, which it incorporates into its responsive pleading by reference, the plain language of the subcontract agreement makes clear that A.I.A. 201 does not apply to the subcontract. (Doc. 39 n.2). Defendant also points to extrinsic evidence supporting its view that A.I.A 201 was not part of the subcontract. Defendant argues that under A.I.A. 201, the architect was responsible for approving pay application, but none of the pay

application were approved by the Project architect.  Further, if A.I.A. 201 was part of the subcontract, Defendant asserts that Plaintiff would have to file its claims relating to non-payment and schedule changes to the Project architect resolution. Defendant argues that Plaintiff's failure to file its claims with the architect demonstrates that A.I.A. 201 was not meant to apply to the subcontract.  Thus, there is a question of whether A.I.A. 201 is part of the subcontract or not, and both parties take extremely different positions on the issue.

    As to the issue of whether Defendant breached the subcontract by failing to submit its claim regarding the fireproofing to the architect and by failing to inform Plaintiff of the defective fireproofing, the parties also have disputes of fact.  Again, the parties dispute whether A.I.A. 201 is part of the subcontract and dispute whether the subcontract required Defendant to notify Plaintiff regarding the defective fireproofing. Further, the parties dispute whether Defendant notified Plaintiff regarding its belief that the installation of the fireproofing was deficient.  Plaintiff argues that Defendant never notified Plaintiff of any claim regarding the fireproofing.  Further, Plaintiff alleges that it was never told either before or after its termination that there were alleged deficiencies with the fireproofing nor was it given the opportunity to inspect the deficiencies.  (Doc. 73 ¶¶7-9).  However, Defendant argues that it sent Plaintiff a letter on May 4, 2007 informing Plaintiff that it was going to hire an independent consultant to examine the fireproofing and that it believed factors other than foot traffic caused the fireproofing failures.  (Doc. 90, Ex. 1-S).  Defendant also argues that it sent Plaintiff a letter on July 5, 2007 informing Plaintiff of the deficiencies with

the fireproofing and that it was rejecting Plaintiff's fireproofing and having it removed. (Doc. 90, Ex. 1-V). As to whether Defendant gave Plaintiff an opportunity to inspect the fireproofing, Defendant argues that Plaintiff did have the fireproofing inspected by its material supplier on May 16, 2007, but made no further requests after to inspect the fireproofing before it was ultimately removed. (Doc. 90, Ex. 5 ¶8, Ex. 1 ¶¶36-41). Clearly, there is a dispute of material fact as to whether Defendant notified Plaintiff of the alleged deficiencies or whether it was even required to provide Plaintiff with notice.

Therefore, the Court finds that there are too many conflicting and disputed facts which preclude the Court from entering summary judgment for Plaintiff.

### IV. Conclusion

Therefore, the Court finds that Plaintiff is not entitled to summary judgment on Counts I and II of the First Amended Complaint and Plaintiff's motion for partial summary judgment (Doc. 73) is **DENIED**.

**IT IS SO ORDERED.**

Signed this 13th day of August, 2009.

/s/ David R Herndon
**Chief Judge**
**United States District Court**