IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PIASA COMMERCIAL INTERIORS, INC.,**

**Plaintiff,**

**v.**

**J.P. MURRAY COMPANY, INC. d/b/a**
**MURRAY COMPANY et al.,**

**Defendant.**                              No. 07-617-DRH

**ORDER**

**HERNDON, Chief Judge:**

### I. Introduction

On October 7, 2008, Plaintiff Piasa Commercial Interiors, Inc., filed its Second Amended Complaint (Doc. 83) amending Count III of its Complaint to add a claim of conversion.[1] Plaintiff's amended Count III alleges a claim of conversion against J.P. Murray Company ("Murray") and Fidelity and Deposit Company of Maryland ("Fidelity"), alleging that Defendants had converted the funds owed to Plaintiff under the terms of the subcontract for work that it had performed.

Specifically, in Count III, Plaintiff alleges that it entered into a subcontract agreement with Defendant Murray to perform the drywall frame and board, spray-on fireproofing, acoustical and E.I.F.S. work that Defendant Murray

---

[1] The Court had previously Granted Defendant Fidelity and Deposit Company of Maryland's Motion to Dismiss Count III of Plaintiff's First Amended Complaint, but had allowed Plaintiff leave to amend Count III (*See* Doc. 80).

was obligated to perform for the Richland Memorial Hospital.  Plaintiff alleges that sometime prior to June 21, 2007 Defendant Murray was paid by the hospital for work performed by Piasa who had billed Murray under Pay Applications 8 and 9 in the sums of $25,982.10 and $11,755.80.  Plaintiff alleges that Defendant Fidelity knew that Murray had been paid those amounts by the Hospital and refused to pay Plaintiff (Doc. 83 ¶ 37).  Plaintiff alleges that under these circumstances, a constructive trust was imposed on the money Murray received for Plaintiff's work, requiring that the money not be used for any other purposes (*Id*.).  Plaintiff further alleges that Murray was required to pay those sums to Plaintiff under the terms of the subcontract and the incorporated project manual and AIA201, 1997 edition.[2]  Plaintiff also alleges that Defendant Fidelity acted jointly with Defendant Murray in refusing to pay the owed sums, thereby converting them.  Plaintiff alleges that it had an absolute and unconditional right to immediate possession of the sums after Plaintiff demanded payment (*Id*. at ¶ 39).

Defendants have filed a motion to dismiss Count III of Plaintiff's Second Amended Complaint (Doc. 84).  Specifically, Defendants moved to dismiss Count III because, they argue, that Plaintiff can not state a claim of conversion as a subcontractor.  Plaintiff has filed a response to Defendants' motion (Doc. 93 & 94).  Based on the following, the Court **DENIES** Defendants' motion to dismiss (Doc. 84).

---

[2] The Court notes that Plaintiff and Defendants dispute whether the terms of AIA201, 1997 edition are incorporated into the subcontract between Plaintiff and Defendant Murray.  Plaintiff contends that the subcontract included the project manual which incorporates AIA 201.  Defendant Murray contends that AIA201 is not a part of the subcontract (*See* Doc. 100).

## II. Discussion

### A. Motion to Dismiss Standard

Defendants bring their motion to dismiss pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** for failure to state a claim. When ruling on a motion to dismiss for failure to state a claim under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, the Court must look to the complaint to determine whether it satisfies the threshold pleading requirements under **FEDERAL RULE OF CIVIL PROCEDURE 8**. **Rule 8** states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." **FED. R. CIV. P. 8(a)(2)**. In a recent opinion issued on May 21, 2007, the Supreme Court held that Rule 8 requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion. ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do...." ***Id.* at 555, 127 S. Ct. at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986))**. The Seventh Circuit has read the *Bell Atlantic* decision to impose "two easy-to-clear hurdles":

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the...claim is and the grounds upon

which it rests.' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

***E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citations omitted).**

### B. Analysis

Defendants argue that Plaintiff has failed to state a claim for conversion against Defendants because, they argue, that a Subcontractor claiming a right to money paid to the General Contractor cannot maintain an action in conversion when the money was due to the Subcontractor upon successful completion of the duties of the subcontractor.

Conversion is the intentional, "unauthorized act which deprives a man of his properly permanently or for an indefinite time." ***In re Thebus*, 108 Ill.2d 255, 259, 483 N.E.2d 1258, 1260 (Ill. 1985) (citations omitted)**. In order to properly allege a claim of conversion, a plaintiff must allege:

> (1) an unauthorized and wrongful assumption for control, dominion, or ownership by a defendant over a plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property.

***Fonda v. General Casualty Company of Illinois*, 279 Ill.App.3d 894, 899 665 N.E.2d 439, 442 (1st Dist. 1996) (citing *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 886, 565 N.E.2d 93, 96-97 (1st Dist. 1990). *See also Eggert***

*v. Weisz*, **839 F.2d 1261, 1264 (7th Cir. 1988).** To maintain a claim of conversion, the plaintiff must allege that the money is identifiable and at all times belonged to the plaintiff. *In re Thebus*, **108 Ill.2d at 260-61, 483 N.E.2d at 1260-61.**

Defendants contend that Plaintiff can not maintain an action in conversion because they can not show that they had a right to immediate possession of the funds. Defendants rely on *Doing Steel Inc. v. Castle Construction Corp.*, **No. 02 C 1674, 2002 WL 31664476 (N.D. Ill. Nov. 21, 2002)** to support their contention that Plaintiff, as a subcontractor, can not maintain its claim of conversion because Plaintiff was not at all times entitled to the money alleging owed it as the subcontract entitled Plaintiff to the funds only on the successful completion of its duties under the subcontract. In *Doing Steel*, a subcontractor filed a claim of conversion against the general contractor because the contractor was required to make payments to the subcontractor upon satisfactory performance of its work and, although the contractor had received the funds owed the subcontractor, it did not pay the subcontractor for the work it performed. *Id.* **at * 1-2**. The court in that case determined that the subcontractor could not maintain a claim of conversion because the funds did not at all times belong to the subcontractor as it was only entitled to money upon successful performance of its duties. *Id.* **at * 3 (noting that the terms of the subcontract was an obligation to pay)**. *See also Doing Steel, Inc., v. Castle Construction Corp.*, **No. 02 C 1674, 2003 WL 21254345 (N.D. Ill. May**

**29, 2003**).  Defendants allege that the factual situation here is similar to that of ***Doing Steel*** because Plaintiff was only entitled to money under the subcontract for "full and complete performance" of its duties under the subcontract (Doc. 2 Ex. A ¶7).[3]

As Plaintiff points out, however, the factual situation in this case is distinguishable from that in ***Doing Steel***.  Plaintiff alleges that under the terms of the Subcontract and, more importantly, the terms of AIA 201, it was entitled to the funds paid to Defendant Murray.  Plaintiff contends that the terms of AIA 201 require Murray to continue to make progress payments to Piasa even if it had a claim against Piasa, while it sought resolution of its claim through the architect (See Doc. 69 Ex. H, AIA 201, §§ 4.3.1, 4.3.2, & 4.3.3).  More importantly, § 9.7.1 of AIA 201 allowed Piasa to stop work on the building if Murray did not pay Piasa.  Piasa could, allegedly, stop work and be relieved from further performance of the Subcontract until such payment owed was received from Murray.  While the Subcontract stated that payment was only due on full and complete performance by Piasa, the Subcontract allegedly also allowed Piasa to stop performance on the Subcontract until such time as it received the funds due it.  The facts here are distinguishable from ***Doing Steel*** because AIA 201 entitled Piasa to stop work altogether and demand payment without having completed the project.  Thus, Plaintiff was not

---

[3] The terms of the Subcontract provide that: "The Contractor agrees, in consideration f the full and complete performance of the said work by the Subcontractor in accordance with the contract documents, to pay or cause to be paid to the Subcontractor the sum above stated under "Compensation of Subcontractor"... (Doc. 2 Ex. A ¶ 7).

entitled to the money only on the successful performance of its duties like in ***Doing Steel***, but instead had an immediate right to possession.  The Court notes that the parties dispute whether AIA 201 is part of the Subcontract and applies to the parties contractual relationship (*See* Doc. 100).  However, the issue of whether AIA 201 is part of the subcontract are issues of fact inappropriate for resolution at this stage.

Further, Plaintiff has alleged that the money in this case was identifiable. ***See In re Thebus*, 108 Ill.2d at 264, 483 N.E.2d at (While a specified identifiable fund can be the subject of conversion, there is no claim of conversion for a mere obligation or debt).  See also *Roddick Development Investment Company, Inc. v. Community Bank of Edgewater*, 282 Ill.App.3d 1052, 1059, 668 N.E.2d 1129, 1135 (1st Dist. 1996) (finding that plaintiff's claims were identifiable because it was a specific amount transferred to defendant from an outside source for remittance to plaintiff rather than "merely a portion of its own assets that it was obligated to use to satisfy a debt to the plaintiff")**.  Here, Plaintiff alleges that it was owed the respective sums of $25,982.10 and $11,755.80 under pay applications 8 and 9 and that Defendants have received money from Memorial Hospital for those pay applications. Defendants, for purposes of this motion, have also assumed that Plaintiff can prove that the funds are held in trust for Plaintiff. Plaintiff further contends that it had an immediate right to possession of those funds under the subcontract which allegedly allowed them to cease work and relieved them of further obligations to perform the subcontract when

Defendants refused to pay. At this stage, Plaintiff has alleged all the elements for a claim of conversion. Therefore, the Court **DENIES** Defendant's motion to dismiss Count III (Doc. 84).

### III. Conclusion

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Count III of Plaintiff's Second Amended Complaint.

**IT IS SO ORDERED.**

Signed this 17th day of September, 2009.

/s/    DavidRHerndon

**Chief Judge**
**United States District Court**