## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PIASA COMMERCIAL INTERIORS, INC.,**

**Plaintiff,**

**v.**

**J.P. MURRAY COMPANY, INC. d/b/a**
**MURRAY COMPANY, et al.,**

**Defendants.**                                    **No. 07-617-DRH**

## <u>ORDER</u>

**HERNDON, Chief Judge:**

Before the Court are five motions *in limine* filed by Defendant J.P. Murray regarding potential evidence that Plaintiff Piasa might advance at trial (*See* Docs. 148, 149, 150, 151, & 152). Plaintiff Piasa has filed Responses to all of the motions (*See* Docs. 156, 159, 157, 155, & 158 respectively). Defendant has filed Replies (*See* Docs. 165, 168, 169, 166, & 167 respectively). Defendant J.P. Murray has also filed a Motion to Strike Plaintiff's Request to Bar Evidence Found in Plaintiff's Response to Murray Company's Second and Fourth Motions *in Limine* (Doc. 163). Plaintiff Piasa has also filed a Response to that motion (Doc. 173). Defendant has filed a Reply (Doc. 175). The Court rules as follows:

**A.     Motion to Strike**

Defendant J.P. Murray has filed a motion to strike Plaintiff's request to bar evidence as argued in Plaintiff's responses to Defendant's second and fourth motions *in limine* (Doc. 163). In both Plaintiff's response to Defendant J.P. Murray's

second and fourth motions *in limine*, Plaintiff argues that evidence regarding the condition of the fireproofing after the broom tests should not be admitted as a sanction for the spoliation of evidence (*See* Doc. 155 pp. 6-7 & Doc. 159 p. 3). While Plaintiff argues that it has not moved the Court for sanctions nor has it filed a motion to bar the evidence, Plaintiff's response clearly argues that the evidence should be barred under the rules governing evidence spoliation.  Defendant J.P. Murray argues that those requests should be stricken because it did not act in bad faith in removing the fireproofing, the broom test is a valid test for testing fireproofing, and Plaintiff had the opportunity to test the fireproofing before it was removed.

A sanction for spoliation of evidence requires a showing of bad faith. ***Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)**. A partying seeking sanctions for the destruction of evidence must show that the destruction was done in bad faith. **Id. (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("That the documents were destroyed *intentionally* no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information")); see also *Keller v. United States,* 58 F.3d 1194, 1197 (7th Cir. 1995)**.

Here, the Court finds no evidence of bad faith.  While Piasa offers evidence claiming that Defendant J.P. Murray acted in bad faith in not providing reports to Piasa, in failing to pay Piasa, and in failing to disclose internal discussions

to Piasa, Piasa offers no evidence to the matter at issue in Defendant J.P. Murray's motion: the bad faith of J.P. Murray in removing the fireproofing after the broom testing.  Piasa offers no evidence to support its argument that the removal of the fireproofing was in bad faith, but instead only argues that it was never allowed to test the fireproofing after the broom testing and that the broom testing results would not be admissible at trial.  To the contrary, the Court finds that J.P. Murray's removal of the fireproofing was not in bad faith.  J.P. Murray contends, and Piasa does not deny, that it removed the fireproofing at the request of the Hospital because the Hospital was concerned that delaminated fireproofing might get into the ventilation system and affect patients' health (*See* Doc. 163, Ex. F at ¶¶ 11-14).  Piasa has offered no evidence to the contrary, nor have they offered any evidence that J.P. Murray's actions in removing the fireproofing was some how nefarious and done to hide evidence.

In Piasa's response to Defendant's fourth motion *in limine* (Doc. 155), Plaintiff does argue that the removal of the fireproofing prevented Piasa from conducting its own tests on the fireproofing.  However, the evidence shows that Piasa did have access to the project before the broom testing and in fact performed tests on the fireproofing.  On May 16, 2007, Mr. Randy Sneegas, who worked for Isolatek, Piasa's material supplier, and another Isolatek representative inspected the fireproofing project and submitted reports to Piasa.  (*See* Doc. 163 Ex. A at pp. 72-78; Docs. 90 Ex. X).  While Piasa argues in its response that it was barred from the project after the termination of its subcontract, as Defendant J.P. Murray points out,

it only informed Piasa that it could not return to work on the project after Piasa had informed J.P. Murray that it would return to the project at a time contrary to the schedule (See Docs. 155 Exs, E &F; Doc. 90 Ex 1 at ¶ 41).  There is no evidence that Piasa asked to view the site in order to test the fireproofing and no evidence that J.P. Murray would have prevented Piasa from accessing the fireproofing work for testing purposes.  While Piasa argues that they needed J.P. Murray's reports to conduct a subsequent review of the fireproofing, they provide no support to this argument, nor have they explained why they were entitled to the reports or why the reports were needed in order for them to conduct further testing.

Further, the Court finds no issues with the broom testing performed on the fireproofing.  While Piasa argues in its response that the broom testing would not be admissible under the *Daubert* standards, it offers no evidence to support that argument.   Instead, the evidence shows that broom testing was an acceptable procedure (*See* Doc. 163 Ex. D at p.6).

Accordingly, the Court finds no basis for the sanctions for spoliation of evidence as Plaintiff refers to in its responses.  Thus, the Court **GRANTS** Defendant's Motion to Strike (Doc. 163) and **STRIKES** the request for sanctions in Plaintiff's response to Defendant's Second and Fourth Motions *in Limine* (Docs. 159 & 155).

**B.      First Motion *in Limine***

Defendant J.P. Murray's first motion *in limine* (Doc. 148) focuses on a piece of metal deck referred to in a videotaped deposition.  Specifically, Defendant

J.P. Murray seeks to bar any use of John Hahn's videotaped deposition regarding pieces of the metal deck, any reference to the pieces, or any demonstration involving the pieces of metal deck.  Plaintiff has filed a response to the motion arguing that the use of the pieces are merely for demonstrative purposes to show the jury the shape of the steel deck (Doc. 156).  Defendant has filed a reply (Doc. 165).

Defendant J.P. Murray argues that the use of the pieces of the metal deck would be irrelevant and misleading to the jury.  Specifically, J.P. Murray argues that the pieces, particularly when held overhead, show a noticeable sag which is far greater than occurs under normal site conditions and would be misleading to the jury as to the deck's strength and stability.  Further, J.P. Murray argues that Plaintiff cannot establish that demonstration of the pieces are under similar conditions to the pieces on the roof deck or substantially similar to those used on the roof.

Defendant J.P. Murray seeks to bar the use of metal pieces as a demonstrative exhibit.  However, the decision to allow the use of demonstrative exhibits is within the discretion of the trial court.  ***Wipf v. Kowalski*, 519 F.3d 380, 387 (7th Cir. 2008)**.   However, Defendant argues that use of such an exhibit will mislead the jury.  **See FEDERAL RULE OF EVIDENCE 403 ("[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion or the issues, or misleading the jury.")**.  Here, Plaintiff contends that it only wishes to use the materials as a demonstrative exhibit for the purpose of showing the shape and configuration of the roof deck, and

not for the purpose of showing that the deck was too lightweight for the application of the fireproofing.  The Court finds that the use of the pieces of metal deck are reasonable for this purpose and will not mislead the jury.  Thus, the Court **DENIES** Defendant's first motion *in limine* as to the pieces of metal deck.  The pieces may be used as demonstrative evidence to show the shape of the metal.  However, as Defendant points out, the display of the material above one's head does produce a notable sag which might mislead the jury into believing that the material was too lightweight.  Thus, the Court will bar any demonstrations by witnesses holding the metal overhead.

**C.      Second Motion *in Limine***

J.P. Murray's Second Motion *in Limine* (Doc. 149) seeks to limit evidence regarding whether "broom testing" or patching of the fireproofing material somehow caused fireproofing failure.  Specifically, J.P. Murray argues that Piasa's only expert who opined that the broom testing and patching caused the fireproofing to fail was stricken and Piasa's new expert only opines that the fireproofing was damaged by roof traffic.  J.P. Murray submits that because Piasa lacks an expert who opines that broom testing or patching played a role in the fireproofing's failure and because its lay witnesses lack the requisite knowledge to give such an opinion, that Piasa be barred from submitting evidence that the broom testing and patching caused the damage.  Piasa has filed a response (Doc. 159) arguing that while it will not submit evidence that patching caused the damage to the fireproofing, Piasa's witnesses, including Terry Jansen, David Jansen, and Robert Howard should be

allowed to present their opinions that the broom testing caused the destruction of the fireproofing.  Further, Piasa argues that the results of the broom testing should be barred from trial as a sanction for the spoliation of evidence and because it does not pass the *Daubert* test.

Defendant J.P. Murray argues that the opinions regarding the broom testing and patchwork should be barred because Piasa lacks expert witnesses on the matter.  **FED.R.EVID. 702** provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A Court may admit expert opinions if the witness is both qualified and the testimony would be helpful to the jury.  **See *United States v. Winbush*, 580 F.3d 503, 510 (7th Cir. 2009)**.  In making this determination district courts rely on a "three-step analysis:  the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education,' FED.R.EVID. 702**; the expert's reasoning or methodology underlying the testimony must be scientifically reliable, [***Daubert v. Merell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)**;][1] and the testimony must assist the trier of fact to understand the

---

[1] The Daubert test requires that in judging expert testimony the court should follow the following guideposts: "(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the

evidence or to determine a fact in issue. ***Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)**. "[T]he opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." ***Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999)(citation omitted)**.

Here, Defendant J.P. Murray asserts, and Piasa does not deny that Piasa lacks an expert witness who can testify as to whether broom testing played a role in the destruction of the fireproofing. Piasa's retained expert does not opine that broom testing caused the fireproofing to fail and none of Piasa's employees witnessed the broom testing or had any experience with broom testing. In fact, Piasa's President had not even heard of broom testing (Doc. 149 Ex. F at pp. 119-20). While Piasa does not deny that it lacks expert opinions regarding the broom testing, it argues that it should be allowed to present lay witness testimony that the fireproofing was damaged by the broom testing. However, lay witness testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." **FED.R.EVID. 701.** "While experts are allowed to give testimony based outside of their personal experience or observation, lay witnesses are not." ***Von der Ruhr v. Immtech Intern., Inc.*, 570**

---

scientific community." ***Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 593-94)**.

**F.3d 858, 864 (7th Cir. 2009)**.

Here, Plaintiff argues that if evidence regarding the broom testing is allowed, Terry Jenson, Robert Howard, and David Jansen should be allowed to testify as to whether they believed the testing could have caused the damage to the fireproofing.  However, while Piasa argues that the witnesses were never asked their opinion as to the broom testing during their deposition testimony, Piasa has failed to show that they have any personal experience or observations regarding the broom testing as is required for lay witnesses.  In fact, none of Piasa's witnesses saw the broom testing being performed or knew much about the test itself.  Accordingly, the Court finds that the witnesses lack sufficient experience or observations to testify about the broom testing.  Therefore, the Court **GRANTS** Defendant J.P. Murray's motion *in limine* as to the broom testing.

As to J.P. Murray's argument regarding the opinions of Piasa's witnesses as to the patchwork, Piasa concedes that it will not elicit opinions from its witnesses as to whether patchwork could have caused the fireproofing to fail.  Further, the Court finds that Piasa witnesses lack the expertise needed to testify as experts on the patchwork and its lay witnesses lack the necessary personal knowledge to testify.  Thus, the Court **GRANTS** J.P. Murray's motion as to the patchwork as well.

The Court also notes in Piasa's response, that Piasa argues that the results of the broom testing should be barred from evidence as a sanction for the spoliation of evidence and because the test does not meet *Daubert* standards.

However, the Court previously struck Piasa's arguments regarding the broom testing, finding that the evidence was not destroyed in bad faith and that the broom test was an adequate for *Daubert* purposes.  Accordingly, the Court **DENIES** Piasa's request to bar evidence.

**D.    Third Motion *in Limine***

Defendant J.P. Murray's Third Motion *in Limine* (Doc. 150) seeks to exclude evidence regarding Robert Howard and David Jansen's opinions as to the cause of the failure of the spray-on fireproofing.  Specifically, Defendant argues that the witnesses are neither qualified as experts to testify as to the cause of the fireproofing's failure nor have they performed adequate testing to determine a cause for the failure.  Plaintiff, in its response (Doc. 157), argues that the witnesses are qualified as experts because they are familiar with the specific spray-on fireproofing, have supervised the crew which put on the fireproofing, and have inspected past fireproofing failures.[2]

Defendant J.P. Murray argues that the opinions of Howard and Jansen should be excluded because neither witness is an expert under **FEDERAL RULE OF EVIDENCE 702.  FED.R.EVID. 702** provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,

---

[2]  Specifically, Piasa argues that Robert Howard has supervised construction projects where the specific fireproofing was applied and is familiar with the fireproofing as he has read the literature and has previously inspected a project where roof traffic caused the fireproofing to fail.  Piasa argues that David Jansen is also qualified because he read the literature of the manufacturer and was present when some of the fireproofing fell from the roof deck.

a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

While Plaintiff argues that both Robert Howard and David Jansen can be considered experts on spray-on fireproofing, they possess no knowledge or skill that would allow them to be considered experts. Although Plaintiff alleges that both Howard and Jansen have extensive knowledge of spray-on fireproofing, have applied fireproofing in the past, and have supervised the application of fireproofing, the witnesses own depositions refute those claims. To the contrary, David Jansen testified that he started out as a carpenter for Piasa and while he has supervised the application of fireproofing he has never applied the fireproofing himself or inspected the fireproofing (Doc. 150 Ex. B at pp. 12-13, 38-39). Further, Robert Howard testified he had never performed any testing on fireproofing and he primarily served as a "warehouse man" (Doc. 150 Ex. A at pp. 99, 14-19). Both Robert Howard and David Jansen have minimal experience in regards to fireproofing or failed fireproofing. *See Jones*, **188 F.3d at 723 ("Whether a witness is qualified as an expert can only be determined by comparing the are in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.")**. Further, both men lack sufficient data to support their opinions as neither witness viewed or tested the fireproofing but merely based their opinions on past jobs or, in David Jansen's case, his view of the roofers after the

application of the fireproofing (Doc. 150 Ex. B at p. 38).  Because both witnesses

lack the background knowledge and skill necessary to testify as an expert, the Court

**GRANTS** Defendant's motion *in limine*.  Accordingly, Plaintiff is precluding from

introducing evidence related to the opinions of Robert Howard and David Jansen in

regards to the cause of the failure of the fireproofing.

E.      **Fourth Motion *in Limine***

        In Defendant J.P. Murray's fourth motion *in limine* (Doc. 151)

Defendant argues that Plaintiff should be prohibited from referencing J.P. Murray's

alleged failure to produce certain tests preformed by Charles J. Campisi and Patriot

Engineering and Environmental, Inc. from June and July 2007.   Defendant

anticipates that Piasa will try to draw an inference that J.P. Murray's failure to turn

over the reports was in bad faith.   However, J.P. Murray argues that it was not

required to turn over the reports and that referencing their failure to do so is both

irrelevant and, even if relevant, would only serve to confuse and mislead the jury.

Plaintiff, in response, argues that it was entitled to the reports under the terms of the

contract.  Plaintiff further argues that the evidence of the results of the broom testing

should be barred at trial, but the Court has previously stricken that request.

        FEDERAL RULE OF EVIDENCE 401 provides that relevant evidence is any

evidence that has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than

it would be without the evidence."  Evidence that is not relevant is not allowed to be

presented at trial.  **FED.R.EVID. 402.**  Here, Piasa alleges that J.P. Murray was required to turn over the reports under the subcontract and specifications.  Piasa points to the specifications which make up part of the contract and Technical Manual 12-A.  However, nowhere in the specifications submitted by Piasa exists a requirement to turn over reports from J.P. Murray's testing.  Presumably, Piasa is referring to the specifications requirements that density testing be performed pursuant to either Technical Manual 12-A or ASTM E605 (*See* Doc. 155 Ex. A).  Technical Manual 12-A does require that written reports from testing be turned over to Piasa (*See* Doc. 155 Ex. B).  The section of specifications Piasa is presumably referring to, however, deals with density testing and not bond testing which is at issue in this case.[3]  Bond testing, under the specifications, is performed pursuant to ASTM E 736 and not Manual 12-A.  Piasa has not alleged that ASTM E 736 requires written reports.  According, the Court finds that the specifications do not require J.P. Murray to turn over any reports of their testing and thus their failure to turn over such reports is irrelevant to the matters at issue in this case.

Piasa contends that it was also entitled to the inspection reports as part of the "seven-day notice before termination" provision in ¶ 14 of AIA-201.  Although the parties disagree as to the applicability of AIA-201 to the parties' subcontract, Piasa has not shown how the provision also requires that reports be turned over to

---

[3] Section 3.6.B.1.d regarding density testing is the only section on testing requirements in the specifications cited by Piasa that require compliance with Manual 12-A.  None of the other testing specifications refer to Manual 12-A.  Particularly, the section regarding bond testing which is at issue in this case does not require testing to the specifications in Manual 12-A.

Piasa. Although Piasa claims it was entitled to the inspection reports so that it would know of the deficiencies and be able to cure, it fails to cite to any authority that includes such a requirement. Therefore, the Court finds that Piasa was not entitled to the reports and any testimony as to the failure to provide those reports is irrelevant. Accordingly, the Court **GRANTS** Defendant's motion *in limine* regarding the failure to provide reports to Piasa before litigation began.

**F.      Fifth Motion *in Limine***

Defendant J.P. Murray's Fifth Motion *in Limine* (Doc. 152) seeks to exclude evidence regarding fireproofing performed by Piasa on a project in Greenville, Illinois. Defendant argues that the project in Greenville is not relevant to the quality of work performed on the project at issue in this case because it involved different roof decking and was not performed by the same workers.

FEDERAL RULE OF EVIDENCE 401 provides that relevant evidence is any evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, evidence of fireproofing on another project is not relevant to the fireproofing, and more importantly, the adequacy of the fireproofing work by Piasa at the project at issue in this case. While Piasa argues that evidence of work at its Greenville project will show that proper techniques were used at the Olney Project (the project at issue in the case), the two projects are dissimilar and did not involve the same employees. Specifically, the Greenville

Project involved application of fireproofing to a galvanized roof deck, while the Olney Project involved a painted roof deck which requires extra care. While Piasa might have adequately applied fireproofing to the galvanized roof deck, the evidence is not relevant as to whether they performed adequate work and took the extra care that is required on a painted roof deck. As the two Projects are dissimilar, the Court finds that evidence regarding the application of fireproofing at the Greenville Project is not relevant under Rule 401. Accordingly, the Court **GRANTS** Defendant J.P. Murray's fifth motion *in limine* (Doc. 152) to bar any evidence or argument that because there were no fireproofing failures at the Greenville Project that Piasa's work on the Olney Project was correct.

Accordingly, the Court **GRANTS** Defendant J.P. Murray's Second, Third, Fourth and Fifth Motions *in Limine* (Docs. 149, 150, 151, 152) as well as its Motion to Strike (Doc. 163). The Court **DENIES** Defendant's First Motion *in Limine* (Doc. 148) but prohibits demonstrations with the pieces of metal material held overhead. Further the Court **DENIES** Plaintiff's request to bar the broom testing results.

**IT IS SO ORDERED.**

Signed this 2nd day of September, 2010.

/s/    David R Herndon

**Chief Judge**
**United States District Court**